UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SECURITIES AND EXCHANGE COMMISSION, )
)
Plaintiff, )
)
v. )   Case No. 05 1228 RCL
)
WMDS INC., )
 aka WORLD MARKETING DIRECT SELLING INC., )
ONE UNIVERSE ONLINE INC., )
 aka 1UOL, )
SENG TAN, )
CHRISTIAN ROCHON, and )
JAMES BUNCHAN, )
)
Defendants. )

**JURY TRIAL DEMANDED**

MAGISTRATE JUDGE ____RBC____

## COMPLAINT

Plaintiff Securities and Exchange Commission ("SEC" or "Commission"), for its Complaint against defendant WMDS Inc. ("WMDS"), aka World Marketing Direct Selling Inc., OneUniverseOnlineInc., aka 1UOL ("1UOL"), defendant Seng Tan ("Tan"), defendant Christian Rochon ("Rochon"), defendant James Bunchan ("Bunchan"), alleges the following and, pursuant to Federal Rule of Civil Procedure 38(b), hereby demands a trial by jury of any issue triable of right by a jury:

## SUMMARY

1.      This matter involves a fraudulent offering of securities and the misappropriation of investor funds by WMDS Inc., which also does business under the name World Marketing

1

Direct Selling, Inc. and OneUniverseOnlineInc., which also does business under the name 1UOL. WMDS is a Massachusetts-based company, incorporated in the Commonwealth of Massachusetts, that purports to be in the business of selling healthcare and dietary products through a multi-level marketing program. 1UOL is a shadow company of WMDS, also purportedly in the business of selling healthcare and dietary products through multi-level marketing. WMDS and 1UOL share business addresses and common principals. The real business of WMDS and 1UOL, however, has been and continues to be the creation of a vast pyramid scheme that markets investments by offering exorbitant rates of return, that has taken in millions of dollars from investors, and that has misappropriated investor funds for the personal use of its principals, to wit, defendants Tan, Rochon and Bunchan.

2. For an investment in units of approximately $26,000 each, WMDS and 1UOL, primarily through the persons of Tan and Bunchan, promise investors that it will make an initial lump sum payment to them of, for example, approximately $2,400, and thereafter will pay the investor $300 per month for life, a monthly payment that will then purportedly pass on to the investors' children. For a limited time WMDS and 1UOL made the promised payments, both to lull investors into thinking that the investment contracts they had entered into were legitimate and to entice them unwittingly to recruit additional investors into the fraudulent scheme. Ultimately, WMDS and 1UOL, and Tan, Rochon and Bunchan, cease making the promised payments to investors based on bogus claims that the investors are not complying with the terms of the investment contracts and thereby complete the misappropriation of the investors' monies.

3. WMDS and 1UOL recruits investors, lured into involvement with the company by the promised rates of return, to recruit additional investors. Investors who market on behalf of

WMDS and bring in new investors are promised additional investment income by virtue of profits realized by the investors they recruited. Victims of the fraudulent scheme appear to be largely Cambodian immigrants. At least two of the defendants, Tan and Bunchan, are of Cambodian ancestry and it is an integral part of the fraud for them to play on their ethnic affinity with the targeted victims of the fraud.

4. WMDS has attracted at least scores and probably hundreds of investors and raised millions of dollars through the fraudulent scheme. As is typical of pyramid schemes, the defendants provided early investors with returns on their money, and using those "successful" investments as a vehicle for recruiting more money and additional investors into the scheme. As is also typical of pyramid schemes, inevitably it collapses of its own weight bilking investors. WMDS stopped making the $300 monthly payments in approximately June 2005. A related company called OneUniverseOnlineInc. and at least three individual officers of WMDS and/or 1UOL have been involved in defrauding investors: Seng Tan (the CEO of WMDS), Christian Rochon (the president of both WMDS and 1UOL), and James Bunchan (an officer and director of both WMDS and 1UOL).

## JURISDICTION

5. The Commission is an agency of the United States of America established by Section 4(a) of the Exchange Act [15 U.S.C. §78d(a)].

6. The Commission seeks entry of a temporary restraining order, a preliminary injunction, a permanent injunction, and the disgorgement of ill-gotten gains and unjust enrichment pursuant to Section 20(b) of the Securities Act [15 U.S.C. §77t(b)] and Section 21(d)(1) of the Exchange Act [15 U.S.C. §78u(d)(1)]. The Commission seeks the imposition of

civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. §77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)].

7. This Court has jurisdiction over this action pursuant to Sections 20(d) and 22(a) of the Securities Act [15 U.S.C. §§77t(d) and 77v(a)] and Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§78u(d), 78u(e) and 78aa]. Venue is proper in the District of Massachusetts because WMDS and 1UOL are Massachusetts corporations with their primary business addresses in the District of Massachusetts, Tan and Rochon both have residence addresses in the District of Massachusetts, contact and meetings with a significant percentage of the victims of the fraudulent scheme occurred in the District of Massachusetts, and mailings and electronic communications in interstate commerce were made by the defendants .

8. In connection with the conduct described in this Complaint, WMDS, 1UOL, Tan, Rochon and Bunchan directly or indirectly made use of the mails or the means or instruments of transportation and communication in interstate commerce.

## DEFENDANTS

9. WMDS was incorporated in Massachusetts in 1999, and has its offices in Canton, Massachusetts. The company also does business under the name World Marketing Direct Selling, Inc. It is purportedly in the business of selling health care products such as vitamins, cosmetics, skin care products, and weight loss products, through a multi-level marketing program.

10. OneUniverseOnlineInc. ("1UOL") was incorporated in Massachusetts in 2000, and has its offices at the same address as WMDS in Canton, Massachusetts. Like WMDS, it purports to be in the business of selling health care products though a multi-level marketing

program.

11. Seng Tan, age unknown, is believed to be a U.S. citizen and a resident of Attleboro, Massachusetts. She is listed on WMDS's Website as the CEO and Executive National Marketing Director of the company.

12. Christian Rochon, age 54, is believed to be a U.S. citizen and a resident of Attleboro, Massachusetts. He is listed on WMDS's website and in its incorporation documents as the president of the company. He is also listed in the incorporation documents for 1UOL as the president of that company.

13. James Bunchan, age 49 or 50, is believed to be a U.S. citizen and is believed to have residences in Massachusetts and Florida. He is listed in the incorporation documents of both WMDS and 1UOL as the treasurer, secretary, and a director of both companies.

## STATEMENT OF FACTS

14. WMDS is operating a classic "Ponzi scheme" in which investors are lured into making investments with a promise of a return on their investments, when in reality their "returns" have simply been payments from their own principal or the principal of later investors lured into the program. WMDS, principally through Tan, but also on occasion with the direct assistance and involvement of Bunchan, has solicited and encouraged individuals to invest in WMDS. Tan represents to potential investors that in exchange for an approximately $26,000 investment in WMDS, a WMDS investor will receive a payment of $300 per month for life. In addition to the monthly $300 payments for life, some investors also have been told they will receive an immediate payment back of approximately $2,400. Investors have been told that the amount of the monthly payments will increase if an investor invests more than the approximately

$26,000 or if the investor recruits additional persons to invest in WMDS. WMDS investors are either told that they are not required to do anything in order to receive the promised returns on their investments or, if they do not raise the issue, are not told that there is a requirement that WMDS investors sell anything or buy anything in order to receive their monthly payments. In addition, at least some investors have been informed that the monthly payments would pass on to their children.

15. Tan appears to have been primarily responsible for soliciting and encouraging the investments on behalf of WMDS and making the above representations. In addition, Bunchan occasionally also has solicited WMDS investments by informing potential investors that if they invested in WMDS they would get a check every month for life, and that the checks would pass down to future generations. In addition, Tan strongly encouraged investors in WMDS to recruit new investors as a means to increase their promised monthly returns. Tan frequently pressured investors to invest additional sums of money as a way to increase their monthly returns, on occasion suggesting they take out home equity lines or withdraw funds from 401(k) plans.

16. WMDS and Tan also used documents as a means to solicit investors. One such document states that an approximately $2,400 "bonus" and $300 per month payment would be received from an approximately $26,000 investment and that the $300 per month payment passes on to the investor's children after death. The document also contains language suggesting that this investment is guaranteed. Specifically, it contains statements such as, "[y]ou should not worry about loosing [sic] your . . . investment at all. W.M.D.S., Inc. has an absolute responsibility to take care of you and your family for life."

17. The document appears to represent to investors that the money they are placing with WMDS is an investment in WMDS. Among other things, the document uses the term "investment" and indicates that "[f]rom your principal investment . . . you will see this money working for you while you're sleeping." The offering document does not discuss the investors' participation in marketing WMDS's products, nor did Tan, Bunchan or anyone else affiliated with WMDS indicate to prospective investors at the time they were being solicited and encouraged to make their investments that they would need to buy or sell any products from WMDS in order to receive their monthly returns. To the contrary, both Tan and Bunchan told them to invest the money in WMDS and in exchange they would receive their specified returns.

18. Most if not all of the investors in WMDS are of Cambodian descent. WMDS appears to have used the shared Cambodian heritage that existed between WMDS representatives and the prospective investors as a selling point in its solicitations. For example, stating to prospective investors, "we are of the same blood, the same nation." In addition to emphasizing the shared Cambodian heritage, at least one of the written solicitation documents draws a parallel between investing in WMDS and fulfilling the American dream, stating that WMDS "urges you to sign up now or you will miss your best chance of fulfilling your American dream".

19. After making their initial investments, investors are pressured to invest more money and to recruit additional investors, and often agreed to invest additional amounts. Hundreds of investors have invested at least several millions of dollars in WMDS based on the solicitations by the defendants.

20. Once initial investments were made with WMDS, the investors began to receive monthly payments from WMDS as promised. The payments continued every month, in some instances for a period of years. Those payments cumulatively totaled hundreds of thousands of dollars, but are far below the amounts the investors invested in WMDS. In recent months the monthly payments from WMDS have stopped. Several investors received a letter from WMDS dated August 15, 2005, apologizing for the delay in sending out June 2005 checks. The letter explained that the company's "technology" for writing checks had become too slow for the amount of "Distributors" it now had, and that WMDS needed to invest in a better technology system, which would take some time to set up. The letter indicated that WMDS hoped to resume sending monthly checks by September 15, 2005. A September 26, 2005 letter on WMDS letterhead from Christian Rochon, the WMDS and 1UOL president, stated that henceforth the WMDS "Bonus checks" would be replaced by a single 1UOL check, and that WMDS and 1UOL were "working very hard to get your Bonus check out." Rochon also appears to have signed an identical letter dated September 22, 2005 sent on 1UOL letterhead. Since those September letters, and despite efforts by investors to obtain payments from WMDS, investors in WMDS have not received any payments in recent months.

21. A letter to at least one investor from an attorney purporting to represent WMDS and 1UOL dated October 19, 2005 informed the investor that he had not received his monthly "bonuses" because he had not been selling or buying enough of WMDS or 1UOL's products. The letter also stated that because "independent sources" had advised WMDS and 1UOL that the investor had been "speaking about 1UOL and WMDS in a negative manner," WMDS and 1UOL had determined the investor's conduct to be "unethical business conduct" and warned of possible

sanctions, including "imposition of a fine." Letters with this type of notice from WMDS were contrary to the representations made by WMDS representatives, primarily Tan and Bunchan, to investors, who were not told that participation in the WMDS investment that promised monthly payments for life was tied to a requirement that they buy or sell certain products. To the contrary, Tan told investors that all they needed to do to receive the promised monthly benefits was to invest in WMDS. Moreover, investors received monthly payments from WMDS (as promised during their solicitations) without having bought or sold WMDS or 1UOL products.

22. As investors have sought to receive payments from WMDS that were promised to them, representatives of WMDS have been busy telling investors not to do anything or file anything against the company, and that if they do they will be removed from the company.

23. By the above means, the defendants are operating a classic "pyramid scheme" in which investors are lured into making investments with a promise of a return on their investment, when in reality their "returns" have simply been payments of their own principal and the principal of later investors brought into the program. There are signs that the scheme may be collapsing, and that the principals have either absconded with investor funds or are about to do so.

### FIRST CLAIM FOR RELIEF
### AGAINST DEFENDANTS WMDS,
### 1UOL, TAN, ROCHON and BUNCHAN

#### Fraud in Connection with the Purchase and Sale of Securities
#### [Violation of Section 10(b) of the Exchange Act and Rule 10b-5]

24. The Commission repeats and incorporates by reference the allegations in paragraphs 1-23 of the Complaint as if set forth fully herein.

25. WMDS, 1UOL, Tan, Rochon and Bunchan, directly or indirectly, acting

intentionally, knowingly or recklessly, by use of the means or instrumentalities of interstate commerce or of the mails, in connection with the purchase or sale of securities: (a) have employed, are employing, and are about to employ devices, schemes or artifices to defraud; (b) have made, are making, and are about to make untrue statements of material fact or have omitted, are omitting, and are about to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or ©) have engaged, are engaging, and are about to engage in acts, practices or courses of business which operate as a fraud or deceit upon certain persons.

26. As a result, WMDS, 1UOL, Tan, Rochon and Bunchan have violated, are violating and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. §240.10b-5].

### SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS WMDS, 1UOL, TAN, ROCHON and BUNCHAN
**Fraud in the Offer and Sale of Securities**
**[Violation of Section 17(a) of the Securities Act]**

27. The Commission repeats and incorporates by reference the allegations in paragraphs 1-26 of the Complaint as if set forth fully herein.

28. WMDS, 1UOL, Tan, Rochon and Bunchan, directly or indirectly, acting intentionally, knowingly or recklessly, in the offer or sale of securities by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails: (a) have employed, are employing, and are about to employ devices, schemes or artifices to defraud; (b) have obtained, are obtaining, and are about to obtain money or property by means of untrue statements of material fact or omissions to state a material fact necessary in order to make the statements made, in the light

of the circumstances under which they were made, not misleading; or ©) have engaged, are engaging, and are about to engage in transactions, practices or courses of business which operate as a fraud or deceit upon the purchasers of the securities.

29. As a result, WMDS, 1UOL, Tan, Rochon and Bunchan have violated, are violating and, unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. §77q(a)].

### THIRD CLAIM FOR RELIEF
### AGAINST DEFENDANTS WMDS,
### 1UOL, TAN, ROCHON and BUNCHAN

**Offer and Sale of Unregistered Securities**
**[Violation of Sections 5(a) and 5(c) of the Securities Act]**

30. The Commission repeats and incorporates by reference the allegations in paragraphs 1-29 of the Complaint as if set forth fully herein.

31. The units, or shares, of the plans and programs offered by WMDS, 1UOL, Tan, Rochon and Bunchan, and the investment contracts related to them, are securities within the meaning of Section 2(1) of the Securities Act [15 U.S.C. §77b(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. §78c(a)(10)]. No registration statement has been filed with respect to these securities, and no exemption from registration has been available.

32. WMDS, 1UOL, Tan, Rochon and Bunchan, directly or indirectly: (a) have made, are making, and are about to make use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise, as to which no registration statement was in effect and for which no exemption from registration was available, and/or for the purpose of sale or for delivery after sale, have carried or caused to be carried, are carrying or causing to be carried, and are about to carry or cause to be

carried through the mails or in interstate commerce, by means or instruments of transportation, securities for which no registration statement was in effect and for which no exemption from registration was available; and/or (b) have made, are making, and are about to make use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed and for which no exemption from registration was available.

33. As a result, WMDS, 1UOL, Tan, Rochon and Bunchan have violated, are violating and, unless enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§77e(a) and 77(e)(c)].

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS WMDS, 1UOL, TAN, ROCHON and BUNCHAN

**Civil Monetary Penalties**
[Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act]

34. The Commission repeats and incorporates by reference the allegations in paragraphs 1-33 of the Complaint as if set forth fully herein.

35. The violations by WMDS, 1UOL, Tan, Rochon and Bunchan identified in this Complaint have involved fraud, deceit, manipulation, or deliberate or reckless disregard of regulatory requirements and have directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.

36. As a result, WMDS, 1UOL, Tan, Rochon and Bunchan are liable for civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. §77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)], in an amount to be determined by the Court.

## NEED FOR EMERGENCY RELIEF

37. This is an ongoing fraud, as WMDS, 1UOL, Tan, Rochon and Bunchan continue to solicit and lull investors, both directly and through a network of unsuspecting agents. Without this Court's action, it is unlikely that WMDS, 1UOL, Tan, Rochon and Bunchan will discontinue their fraudulent solicitations.

38. WMDS, 1UOL, Tan, Rochon and Bunchan already have dissipated assets belonging to investors by transferring them to locations outside the United States and by converting the assets of investors to their own personal use.

39. The emergency relief requested below is necessary in order to prevent further violations of the federal securities laws and further harm to investors, including further dissipation of investor assets.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

A. Enter a temporary restraining order, order freezing assets and order for other equitable relief in the form submitted with the Commission's motion for such relief and, upon further motion, enter a comparable preliminary injunction, order freezing assets and order for other equitable relief;

B. Enter a preliminary injunction extending the terms of the temporary restraining order described above;

C. Enter a permanent injunction restraining the defendants and each of their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of the order or injunction by personal service or otherwise, from directly or indirectly engaging in the conduct described above, or in conduct of similar purport and effect,

in violation of:

    1. Section 10(b) of the Exchange Act [15 U.S.C. 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5];

    2. Section 17(a) of the Securities Act [15 U.S.C. 77q(a)]; and

    3. Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. 77e(a)],

D. Require the defendants to disgorge their ill-gotten gains and unjust enrichment, including prejudgment interest, with said monies to be distributed in accordance with a plan of distribution to be ordered by the Court;

E. Order the defendants to pay appropriate civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. §77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)];

F. Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

G. Award such other and further relief as the Court deems just and proper.

Respectfully submitted,

_____
Martin F. Healey (Mass. Bar No. 227550)
Timothy Henseler (Mass. Bar No. 640055)
ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION
73 Tremont Street, 6th Floor
Boston, Massachusetts 02108
(617) 573-8952 (Healey)
(617) 424-5940 (facsimile)

Dated: November 15, 2005